IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

EXPRESS SERVICES, INC.,       )
                                    )
                  Plaintiff     )
v.                              )    Case No. CIV-06-820-C
                                    )
RUSSELL W. AVERETTE,      )
                                    )
                Defendant   )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Express Services, Inc., is based in Oklahoma City, Oklahoma, and is a worldwide franchisor of temporary personnel services. Through the use of franchise agreements, Plaintiff contracts with persons such as Defendant to operate an Express franchise responsible for a specific geographic area. The business provides workers, called associates, to other companies on a temporary basis. The associates' paychecks are issued by Plaintiff based on information provided by the franchisee. Plaintiff then bills the company, known as a client, for providing the temporary service. Plaintiff and Defendant entered into a franchise agreement on November 17, 2003. The agreement was to cover part of the City of Birmingham, Alabama, and other nearby areas. The agreement was for a five-year term. On August 2, 2006, before its scheduled end date, Plaintiff terminated the franchise agreement based on Defendant's alleged breach of the agreement.

Plaintiff then filed this matter alleging Defendant's breach had caused it harm. In support of its claims of breach, Plaintiff argues Defendant created and began operating a competing business, using training, materials, employees, and customers of Plaintiff's franchise during the time period covered by the franchise agreement and in contravention of

the terms of the franchise agreement.  Defendant filed the present motion arguing:  1) the undisputed facts demonstrate that certain provisions of the franchise agreement purporting to bar competition and/or solicitation are unenforceable under Oklahoma law; 2) that Plaintiff materially breached the terms of the franchise agreement, thereby preventing enforcement of its terms; 3) Plaintiff's claims that Defendant improperly used or disclosed confidential information must fail as Plaintiff has waived any claim of confidentiality by disclosing the material; and 4) that the franchise agreement bars any award of punitive damages.

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir. 1977).  The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(e).  These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Celotex, 477 U.S. at

324.  Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits.  Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992).  "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court."  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998).  All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## DISCUSSION

### A.  Franchise Agreement

Initially, the Court must resolve Defendant's second proposition – whether Plaintiff breached the terms of the franchise agreement.  Defendant argues that if Plaintiff breached first, then Defendant's actions thereafter are irrelevant.  In support of his argument, Defendant asserts that Plaintiff breached the agreement by failing to pay certain taxes owed to the City of Birmingham and improperly terminated the franchise agreement.

### 1.  Taxes

According to Defendant, the City of Birmingham imposes an occupational payroll tax which is premised on 1% of the gross receipts of each employee.  Birmingham also imposes a license fee to operate a business within the city limits.  Defendant argues that Plaintiff owed each tax and never paid either which resulted in a substantial liability and a denial of a business license for the year 2006.  Defendant argues that Plaintiff's failure to pay the license fee was a contributing factor to the hold being placed on the business license for 2006.  In

response, Plaintiff argues that the failure to pay taxes did not constitute a material breach of the franchise agreement because it never affected the ability to conduct business. Plaintiff also notes that the franchise was in fact issued a business license for 2006.

Oklahoma law recognizes the defense of "first breach." Murphy Oil USA, Inc. v. Wood, 438 F.3d 1008, 1015 (10th Cir. 2006) ("It is well settled in Oklahoma that a party to a contract who prevents or hinders performance thereof cannot seek performance by the other contracting party."). Thus, if Defendant establishes that Plaintiff breached the contract, he may escape any obligation he owed under the contract.[1] However, the law is not as broad as argued by Defendant. The issue is not simply whether Plaintiff breached the contract by failing to pay any required taxes, but whether any such breach was material. That is, whether any breach by Plaintiff prevented Defendant from performing the terms of the franchise agreement. Rogers v. Goodwin, 1953 OK 45, ¶ 5, 253 P.2d 844, 846. Defendant has failed to satisfy his burden, as he has offered no evidence demonstrating his franchise was unable to continue placing associates as a result of the failure to pay the required taxes. Thus, Defendant is not entitled to rely on the "first breach" rule as a defense to Plaintiff's claims.

2. Termination

According to Defendant, Plaintiff's termination of the franchise agreement was a material breach. Defendant argues that part of the reason Plaintiff terminated the franchise

---

[1] The Court finds little merit in Plaintiff's argument that it doesn't owe the taxes because no court has ever said it does. The applicable ordinance clearly imposes a tax. The only real dispute is whether any associates were employed in a location that would trigger the ordinance. The parties have failed to provide sufficient evidence to resolve this issue. However, because the Court finds any failure to pay the tax was not a material breach, it is unnecessary to resolve this factual issue.

agreement was his refusal to spend $10,000.00 to upgrade his computer equipment. Defendant asserts that none of the terms of the franchise agreement can be interpreted as requiring such an expenditure, and thus Plaintiff's termination of the franchise agreement was improper.  In response, Plaintiff argues that the undisputed facts demonstrate that prior to the date the notice was sent indicating Defendant would be required to upgrade his equipment, Defendant had already begun plans to start his new business.  Plaintiff argues that as Defendant's actions in beginning the new business were also a ground relied upon in the Franchise Termination Notice, Defendant's complaints regarding the computer upgrade are a red herring.

The Court finds Plaintiff's arguments well founded.  The evidence demonstrates that Defendant had taken steps to form his competing business before he was aware that he would be required to upgrade his computer equipment.[2]  Thus, Defendant's argument that Plaintiff breached the contract is without merit.  In any event, those portions of the franchise agreement cited by Plaintiff in the Notice of Default (Dkt. No. 75, Ex. 7) are sufficient to require Defendant to make the required upgrades.

B.  Noncompete Clause

Plaintiff argues that Defendant's actions in starting a new competing business using associates who had worked for or applied with Plaintiff and employing them at former

---

[2] The evidence relied on by Defendant in his Reply brief to argue that he knew about the required upgrade earlier does not support his position.  That evidence does not indicate the upgrade would be required.  Rather, Defendant's proffered evidence touts the upgrade's benefits and is more akin to a sales pitch than a directive.

customers of Plaintiff violated Section X(A)(1) and (3) of the franchise agreement.  Those

sections state:

> X(A) You will not:

> 1.    During the term of this Agreement, and any extension or renewal, associate directly or indirectly as an employee, proprietor, stockholder, member, partner, agent, consultant or any other form of association of any kind, or serve as an officer of any business competitive to Us or Our franchisees.  This shall include, but is not limited to, the operation of any type of business offering the service of flexible staffing – temporary/contract staffing, or direct hire – professional search.  This restriction applies to:

>> a. The territory granted, or
>> b. Any city in which We or Our franchisees operate or may operate.

> . . .

> 3.    During the term of this Agreement and any extensions or renewals and for eighteen (18) months after termination or expiration of this Agreement, You will not divert or attempt to divert any clients, associates or job applicants of the business franchised to any competitor, by direct or indirect inducement or otherwise.  You agree that during this period You will not do any business competitive with Us with any of the clients, associates or job applicants of the business franchised.

(Dkt. No. 12, Exh 4. pp. 34-35).  Defendant argues these clauses violate 15 Okla. Stat. § 217

and Oklahoma law.  According to Defendant, the above clauses are unenforceable as they

are overly broad in scope and geographic reach.  Defendant argues the clauses prohibit him

from engaging in any business that in any way competes with Plaintiff anywhere in the world

that Plaintiff has a franchise.  Defendant asserts that Oklahoma law will not support such a

broad prohibition.  In response, Plaintiff argues Defendant's interpretations of the clauses are

fanciful and have no basis in reality.  According to Plaintiff, the clauses must be interpreted

in light of the "rule of reason," and when that doctrine is applied the restrictions of the clauses are permissible.

By statute, Oklahoma has expressed its disdain for restrictions on trade.  See 15 Okla. Stat. § 217 ("Every contract by which any one is restrained from exercising a lawful profession, trade or business of any kind, otherwise than as provided by Sections 218 and 219 of this title, or otherwise than as provided by Section 2 of this act, is to that extent void.") (internal footnote omitted).  However, Oklahoma has retreated somewhat from this broad restriction and noted that the statute restricts only restraints that are unreasonable while permitting restraints that protect against unfair competition.  See Bayly, Martin & Fay, Inc. v. Pickard, 1989 OK 122, ¶ 11, 780 P.2d 1168, 1171; Tatum v. Colonial Life & Accident Ins. Co. of Am., 1970 OK 27, ¶ 8, 465 P.2d 448, 451.  "A restraint is deemed reasonable only if it (1) is no greater than is required for the employer's protection from unfair competition; (2) does not impose undue hardship on the employee; and, (3) is not injurious to the public." Loewen Group Acquisition Corp. v. Matthews, 2000 OK CIV APP 109, ¶ 15, 12 P.3d 977, 980.[3]  With this foundation, the Court turns to the clauses at issue.

Section X.A.1. is not as broad as Defendant argues.  While it is true that under that section Defendant is prohibited from engaging in any business that is a competitor of Plaintiff, the key fact is this section applies only while the franchise agreement is in force.

_____

[3] Although Loewen was released for publication by the Oklahoma Court of Civil Appeals and is therefore not binding precedent, its analysis of the issue is consistent with the holdings of the relevant Oklahoma Supreme Court cases.  Accordingly, the Court finds it persuasive and helpful.

Nothing in Section A.1. has any impact on Defendant's opportunities once the franchise agreement is terminated.  Rather, it simply prohibits him from using his position and/or knowledge to assist a competing business while in association with Plaintiff.  In this regard Section A.1. protects Plaintiff from unfair competition and therefore is in harmony with Oklahoma law.

Section X.A.3. is not as narrow.  This section seeks to affect Defendant's actions both during his relationship with Plaintiff and for 18 months thereafter.  The Court finds the 18-month time limit is reasonable.[4]  The second part of the first sentence of Section A.3. seeks to preclude Defendant from soliciting clients, associates, or job applicants to any competitor either directly or indirectly.  The second sentence of the section further seeks to prohibit Defendant from engaging in a competitive business with any of the clients, associates, or job applicants of Plaintiff.[5]  Through these sentences, Section A.3. impacts Defendant's ability to conduct business after the end of his relationship with Plaintiff and impacts the opportunities of persons not a party to the agreement, and therefore, as explained more fully below, the section unreasonably restricts trade.  However, in <u>Bayly</u>, the Oklahoma Supreme Court noted that a court may modify the terms of a contract. <u>Bayly</u>, 1989 OK 122, ¶ 14, 780 P.2d at 1173 ("Because § 217 prohibits only those contracts in unreasonable restraint of

---

[4] Indeed, as noted in Defendant's Reply brief, there is no challenge to the time period.

[5] Contrary to Defendant's argument, this restriction does not have worldwide reach.  Rather, the last portion of the sentence clearly restricts it to those clients, associates, or job applicants of Defendant's franchise.  Thus, the geographic reach of the clause is not greater than the geographic scope of the franchise.

trade, judicial modification is justified if the contractual defect can be cured by imposition of reasonable limitations concerning the activities embraced, time, or geographical limitations."). The Court cannot rewrite the parties' contract and cannot add terms. Id. at ¶ 21, 1175. Here, the Court finds Section A.3. can be modified.

As noted, the first sentence seeks to prohibit Defendant from diverting, "by direct or indirect inducement or otherwise," clients, associates, or job applicants to a competitor. As far as "direct" inducement, the restriction is permissible. Indeed, Oklahoma has routinely found valid restriction clauses that prohibit direct solicitation of parties in a relationship with a former employer. See Tatum v. Colonial Life & Acc. Ins. Co. of America, 1970 OK 27, ¶ 7, 465 P.2d 448, 451; Cardiovascular Surgical Specialists, Corp. v. Mammana, 2002 OK 27, ¶ 19, 61 P.3d 210, 214. However, the restriction on solicitation, "indirect" or "otherwise," must be stricken. As written, the section would prohibit Defendant from opening a competing business and then advertising it in a manner where former clients, associates, or job applicants could see it. Defendant would also violate the clause if a client, associate, or job applicant of his competing business encouraged a current client, associate, or job applicant of Plaintiff to do business with Defendant. Such actions are ordinary competition and they cannot be restricted through the use of a non-compete clause. Mammana, 2002 OK 27, ¶ 18, 61 P.3d at 214.

The second sentence is also impermissibly restrictive. As written, the sentence would prohibit Defendant from using an associate or job applicant who had at any time done business with Plaintiff. It is undisputed that, in the industry, associates and job applicants

apply at many different agencies in hopes of securing work.  The second sentence would unfairly restrict the options of these associates or job applicants.  The sentence would also prohibit former clients of Plaintiff from voluntarily ending their relationship with Plaintiff in favor of Defendant.  Such restrictions impermissibly attempt to restrict normal competition and improperly affect the options of third parties to the franchise agreement.  Id. at ¶ 19.  Consequently, the second sentence must be stricken as an unreasonable restraint.

Thus, as modified, see Bayly, 1989 OK 122, ¶ 14, 780 P.2d at 1173, section A.3. prohibits Defendant, for 18 months from the date of the franchise, from directly soliciting former clients, associates, or job applicants.  Should a person from one of these categories contact Defendant, of their own accord, he may certainly discuss his business with them.  However, Defendant may not, in any way, directly solicit any person within the scope of these categories until the 18 month time period has passed.  Additionally, the geographic reach of the clause is limited to the geographic area assigned to Defendant by the franchise.  Should Defendant wish to open a competing business outside that geographic area, section A.3. would not apply.

Plaintiff argues that 15 Okla. Stat. § 218 provides a legal basis for upholding Section A.3.  In support of its position, Plaintiff directs the Court to two other Oklahoma federal court decisions, Floor Coverings International, Ltd. v. Del Von Lott, Case No. CIV-99-1788-T (W.D. Okla. January 31, 2000), and Domino's Pizza, Inc. v. El-Tan, Inc., et al., Case No. CIV-95-C-180-B (N.D. Okla. April 28, 1995).  Each of these cases determined that Oklahoma would apply § 218 to uphold non-compete agreements between

a franchisor and franchisee.  After consideration of the case law relied on by those courts, this Court is not convinced they reached the proper conclusion.  The cases relied on by <u>Floor Coverings</u> and <u>Domino's Pizza</u> do not apply statutes similar to § 218 or apply statutes at all. Rather, they simply reach the unsurprising conclusion that non-compete clauses can be applied to franchise agreements and that a franchise agreement may include a transfer of goodwill.  With those propositions the Court agrees.  However, neither proposition establishes that § 218 should apply to the present case.

The plain language of the statute makes clear that it is intended to provide protection to the buyer of the goodwill, not the seller:

> One who *sells* the goodwill of a business may agree with the buyer to refrain from carrying on a similar business within a specified county and any county or counties contiguous thereto, or a specified city or town or any part thereof, *so long as the buyer*, or any person deriving title to the goodwill from him *carries on a like business* therein.

15 Okla. Stat. § 218 (emphasis added).  The Oklahoma cases applying the statute are in accord.  In <u>Farren v. Autoviable Services Inc.</u>, 1973 OK 4, ¶ 5, 508 P.2d 646, 648, the Oklahoma Supreme Court stated:

> We believe that the purpose of this statute is to allow the parties to the transfer of a going business to mutually agree, as a part of the value of the business transferred, that the transferee will be protected from his transferor who might use his previously acquired experience, contacts and expertise to promote his own interests in the same field of business in competition with his transferee.

(citing <u>Wesley v. Chandler</u>, 1931 OK 477, 3 P.2d 720).  A similar conclusion was reached in <u>Griffin v. Hunt</u>, 1954 OK 87, ¶ 8, 268 P.2d 874, 876:

The facts here bring this case within the ambit of . . . sections [217 and 218].  Plaintiff did not simply buy buildings, equipment and instruments.  Instead, he sought to and did buy a going business, along with its good will.  The defendant, Dr. Griffin, was the one who was operating the business and had developed the good will.  Plaintiff made it plain that he was not interested in acquiring the hospital and the facilities without having a binding covenant from the defendant that he would not engage in the practice in that county for a period of five years.  The obvious purpose in requiring the giving of that covenant and the making of it by the defendant was to preserve for plaintiff the good will of the business, which he was acquiring.

The Court's research has located no Oklahoma case where § 218 was applied to restrict the actions of the person acquiring a business.  While it may be that there are valid reasons for applying § 218 equally to buyers and sellers, neither the language of the statute nor the Oklahoma Supreme Court's application of the statute supports such a reading.  Given Oklahoma's expressed disdain for non-compete agreements found in § 217, the exception found in § 218 must be strictly construed.  Accordingly, the Court finds 15 Okla. Stat. § 218 does not apply to Section A.3.

C.  Confidential Information

Plaintiff alleges that Defendant improperly used or disclosed certain confidential information in violation of the terms of the franchise agreement, giving rise to a tort claim.  According to Plaintiff, Defendant improperly used certain computer information by copying it from an "SQL server" and transferring it to Defendant's computer for use by Defendant.  According to Plaintiff, the copied information contained data about Plaintiff's customers and employees.  Plaintiff asserts that Defendant used the information by forgoing drug and skill

testing for associates in his business because that testing had been done by Plaintiff and Defendant had the information from the copied computer data.

Defendant argues that much of the information which Plaintiff complains was misappropriated cannot be considered a trade secret under Oklahoma law. Defendant further argues that because Plaintiff sent him supposedly confidential information after the termination of the franchise agreement, that information lost its confidentiality. In any event, Defendant argues that the information is not confidential as it is widely known in the industry. Finally, Defendant argues that Plaintiff cannot claim the identities of its clients and/or associates are confidential as he learned them through his own efforts.

Plaintiff notes that after termination of the agreement, it inadvertently sent some confidential materials to Defendant. According to Plaintiff such an inadvertent disclosure is insufficient to waive the confidential nature of the documents. Plaintiff also notes that the terms of the franchise agreement require Defendant to protect the confidential information even after termination of the agreement.

At the outset, the Court notes its difficulty in resolving the issues as neither party has provided a specific explanation of what material is asserted as confidential; given that shortcoming, the issues raised by Defendant's motion cannot be fully resolved. However, it is possible to address some of the arguments with the information available to the Court. Defendant argues no agreement was in place restricting him from disclosing information provided by Plaintiff after termination of the agreement. However, as noted by Plaintiff, the terms of the agreement clearly required Defendant to maintain the confidentiality of material

even following termination of the agreement.  Likewise, given the terms of the franchise agreement and its requirement that Defendant maintain the confidentiality of the material provided by Plaintiff, the Court finds that any inadvertent disclosure after the termination of the franchise agreement was insufficient to waive the confidential nature of the materials.

Defendant next argues that even if there was not a waiver, the materials for which Plaintiff claims protection are not confidential as they were widely known or used in the trade.  The evidentiary material relied on by Defendant in support of this argument does not establish the conclusion offered by Defendant.  In fact, the testimony on which Defendant relies establishes only that some information in Plaintiff's materials is common knowledge. The testimony does not resolve the issue for the entire contents of the materials.  Defendant's argument to the contrary is misleading.

Finally,[6] Defendant argues that Plaintiff's claim for misappropriation of the identity of clients and/or associates of Plaintiff must fail as that information was acquired by Defendant in the ordinary course of business.  As an initial matter, Plaintiff argues that its claim is not limited to the mere identities of the clients/associates but extends to the key individuals at the companies that used temporary employees, the fact that the company used temporary employees, the type of employee needed, as well as the prices the companies were willing to pay.

---

[6] Plaintiff concedes that it is not making a trade secrets claim for Defendant's use of the telephone number after termination of the agreement.  Plaintiff does assert a claim for breach of the agreement based on this act, arguing the agreement clearly required Defendant to stop using the telephone number upon termination of the agreement.

Turning to the issue of the client/associate identities, the Court finds Defendant is not entitled to judgment.  First, the law is not as clear as Defendant suggests in his brief.  Rather, the full quote from <u>Central Plastics Co. v. Goodson</u>, 1975 OK 71, 537 P.2d 330, is as follows:

> It is usually held that an employee's knowledge of his employer's customers, acquired by him as an ordinary employee and not by virtue of any peculiar trust or confidence placed in him, is not a trade secret, and in the absence of an express prohibitory agreement, the employee may on a change of employment solicit such customers as long as he proceeds from his memory rather than by the unauthorized use of a list of customers.

1975 OK 71 at ¶ 21, 537 P.2d at 334.  Without reaching the question of whether Defendant would be considered an ordinary employee or one in the place of peculiar trust or confidence, there exists an agreement prohibiting Defendant from using the information to compete with Plaintiff.  Here, Plaintiff sues for breach of that agreement and Defendant has failed to offer any evidence or legal authority demonstrating he is entitled to judgment on that claim.

D.  Punitive Damages

The parties are in agreement that the franchise agreement prevents Plaintiff from recovering punitive damages.  Plaintiff has withdrawn its request for punitive damages.  Consequently, Defendant's request for judgment on the claim is moot.

## **CONCLUSION**

As set forth more fully herein, Defendant's Motion for Summary Judgment (Dkt. No. 75) is GRANTED in part, DENIED in part, and MOOT in part.  Consistent with the rulings herein, certain portions of the franchise agreement are stricken.  To that extent, Defendant's

motion is granted.  That portion of the motion seeking judgment on the punitive damages claim is moot in light of Plaintiff's withdrawal of those claims.  The remainder of the motion is denied.

IT IS SO ORDERED this 29th day of June, 2007.

ROBIN J. CAUTHRON
United States District Judge